IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARC W. COOK, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 09-1331 |
| v. | ) | |
| | ) | Amy Reynolds Hay |
| COMMISSIONER OF SOCIAL | ) | Chief Magistrate Judge |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

I. **INTRODUCTION**

Marc C. Cook ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f ("Act"). This matter comes before the Court on cross-motions for summary judgment filed by the parties pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. Nos. 7, 13). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment will be GRANTED, to the extent it seeks a remand for reconsideration, and DENIED, to the extent it seeks reversal and entry of final judgment in favor of Plaintiff.

II. **PROCEDURAL HISTORY**

Plaintiff filed for DIB and SSI with the Social Security Administration July 25, 2007,

claiming an inability to work due to disability as of July 1, 2006. (R. at 111-120).[1] Plaintiff was initially denied benefits on November 20, 2007. (R. at 70-74). A hearing was scheduled for February 4, 2009, and Plaintiff appeared to testify, represented by counsel. (R. at 41, 11-40). A vocational expert, William Reid, also testified. (R. at 11). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on April 2, 2009. (R. at 62-69). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on July 31, 2009, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1-3).

Plaintiff filed his Complaint in this court on September 29, 2009. Defendant filed his Answer on December 11, 2009. Cross-motions for Summary Judgment followed.

### III. STATEMENT OF THE CASE

*A. General Background*

Plaintiff was born June 21, 1962, and was forty six years of age at the time of the hearing before the ALJ. (R. at 16). Plaintiff served in the U.S. Army from 1981 until 1983. (R. at 116). Plaintiff has three sons and one daughter, none of which live with him. (R. at 16). Plaintiff supported himself on public welfare and attended ITT Technical Institute for computer engineering and electronics. (R. at 18). Plaintiff began his training program in 2006, and at the time of the hearing had approximately a year of school remaining. (R. at 18).

*B. Medical History*

Plaintiff's primary care physician was Paul Sung, M.D. Plaintiff's first visit with Dr. Sung

---

[1] Citations to Doc. Nos. 5 - 5-7, the Record, *hereinafter*, "R. at __."

with regard to complaints of back pain, was February 24, 2001. (R. at 172). Dr. Sung noted that Plaintiff suffered from chronic lower back pain at the time. (R. at 172). Plaintiff was also noted as having a cocaine abuse problem. (R. at 172). Plaintiff's next visit with Dr. Sung regarding his back pain was not until September 21, 2006. (R. at 173). At this appointment, Plaintiff complained of back pain, and Dr. Sung diagnosed his condition as chronic lower back pain. (R. at 173). Dr. Sung ordered a consult with an orthopedic surgeon and prescribed Motrin for Plaintiff's discomfort. (R. at 173).

On or about November 27, 2006, Plaintiff visited with orthopedic surgeon Stuart A. Gardner, M.D. as per Dr. Sung's instructions. (R. at 178). Dr. Gardner noted that Plaintiff had been suffering from lower back pain going on four years. (R. at 178). An x-ray taken for the orthopedic examination showed mild degenerative changes in the lower spine. (R. at 178). Dr. Gardner observed tenderness in Plaintiff's lumbar paraspinal region and left scroiliac joint region. (R. at 178). Plaintiff showed flexion in the lumbar spine to fifty degrees with observed discomfort. (R. at 178). Plaintiff also exhibited discomfort when bending to the sides. (R. at 178). Dr. Gardner diagnosed Plaintiff with chronic low back pain with LS strain. (R. at 178). Plaintiff was prescribed Voltaren and physical therapy, and Dr. Gardner recommended regular walking. (R. at 178). While Plaintiff was unsure of whether he should continue to work due to his back, Dr. Gardner suggested that Plaintiff continue his employment. (R. at 178). This was Plaintiff's only visit in the record with Dr. Gardner.

There is no record of Plaintiff visiting any doctor for his lower back pain until January 9, 2007. (R. at 180). On that date, Dr. Sung wrote a letter on behalf of Plaintiff to a Jury Selection Committee in Lawrence County, Pennsylvania, asking that Plaintiff be excused from jury duty

3

because of a history of back pain that rendered him unable to walk or sit for long periods. (R. at 180). Dr. Sung felt that in light of Plaintiff's condition, he should not serve as a juror. (R. at 180). Medical notes from January 9 indicate that Dr. Sung again diagnosed Plaintiff with chronic lower back pain, and - at Plaintiff's request - recommended a consult with a pain management clinic. (R. at 175).

An examination on June 12, 2007, led Dr. Sung to again diagnose Plaintiff with chronic lower back pain, and he prescribed physical therapy and Motrin for pain. (R. at 174). Dr. Sung's notes also indicated that Plaintiff wanted to consult with a pain clinic. (R. at 174).

Plaintiff did not visit with Dr. Sung again until January 25, 2008. (R. at 202). Dr. Sung again noted that Plaintiff suffered from chronic lower back pain. (R. at 202). A September 23, 2008 examination had the same result. (R. at 203). At this examination, Dr. Sung recommended that Plaintiff have another orthopedic consultation with regard to his back pain. (R. at 203). This is the last visit with Dr. Sung in the record. (R. at 203).

Following Dr. Sung's recommendation, Plaintiff was examined regarding his back pain at Tri Rivers Surgical Associates, Inc. - a practice specializing in orthopedic surgery and musculoskeletal medicine - on February 10 and 24, 2009. (R. at 211). There, Plaintiff was seen by physical medicine and rehabilitation specialist Edward D. Reidy, M.D. (R. at 211). Dr. Reidy reviewed x-rays and magnetic resonance imaging ("MRI") scans of Plaintiff's spine. (R. at 211-15). Plaintiff's chief complaint was lumbar spine pain with slight radiation into the left leg. (R. at 212). Plaintiff was noted as not working and not taking any regular medications. (R. at 212). Plaintiff was found to have excellent lumbar flexibility, though he exhibited discomfort. (R. at 212-13).

The MRI of Plaintiff's lumbar spine showed advanced degenerative disease of the L5-S1 disc with retrolisthesis of the L5 relative to S1. (R. at 213). As a result, Plaintiff was diagnosed as

4

suffering from mechanical low back pain with known grade I spondylolisthesis at the 5-1 level. (R. at 213-14). Degenerative disc disease with potential foraminal narrowing was also observed. (R. at 214). Dr. Reidy noted that physical therapy and anti-inflammatory medication had failed to provide Plaintiff with relief. (R. at 213). Dr. Reidy felt that the objective findings reasonably supported Plaintiff's presenting symptoms. (R. at 214). Plaintiff was prescribed a Medrol Dosepak and Motrin 800, and was ordered to reinitiate physical therapy. (R. at 214). Plaintiff declined to have an injection for pain at the time. (R. at 214).

*C. RFC Assessment and Other Limitations Findings*

Plaintiff underwent a number of functional capacity assessments following the filing of his application for SSI and DIB. The first was conducted by Hany Rezk, M.D. for the Pennsylvania Bureau of Disability Determination on October 29, 2007. (R. at 182-88). Dr. Rezk concluded that Plaintiff suffered from low back pain in the form of a muscular sprain. (R. at 188). Upon examination, Dr. Rezk found that Plaintiff had tenderness at the lateral side of the upper spine, and that Plaintiff could raise his legs sixty degrees. (R. at 187). Flexion-extension of Plaintiff's lumbar spine was only to sixty degrees. (R. at 185). Lateral flexion of the lumbar spine was only ten degrees to each side. (R. at 185). Plaintiff was noted as taking Ibuprofen for his pain, but not on a regular basis. (R. at 187). Dr. Rezk also noted that physical therapy had not helped Plaintiff when recommended by Dr. Gardner. (R. at 186).

Dr. Rezk determined that Plaintiff had the ability to frequently lift and carry up to twenty pounds. (R. at 182). Plaintiff had the ability to stand and walk only one to two hours of an eight hour workday, and sit up to eight hours if given the ability to alternate between sitting and standing at his option. (R. at 182). Plaintiff could only occasionally kneel, crouch, and balance, and could never

5

bend or stoop. (R. at 183). No other limitations were noted by Dr. Rezk.

A physical residual functional capacity assessment ("RFC") was conducted by state agency physician Abu N. Ali, M.D. on November 7, 2007. (R. at 189-95). Dr. Ali concluded that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five. (R. at 190). Dr. Ali also concluded that Plaintiff had the ability to stand and walk approximately six hours of an eight hour workday, and to sit approximately six hours. (R. at 190). Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl. (R. at 191). Plaintiff was not otherwise found limited. In making these assessments, Dr. Ali relied primarily upon the findings of Drs. Gardner, Rezk, and Sung. (R. at 194-95).

Dr. Sung, himself, conducted an assessment of Plaintiff's limitations on January 25, 2008. (R. at 205-08). Plaintiff was diagnosed as suffering from chronic lower back pain syndrome of moderate severity. (R. at 205). Plaintiff exhibited decreased energy, sleep disturbance, and loss of interest in activities. (R. at 205). Dr. Sung stated that Plaintiff was unable to bend his spine due to severe lower back pain. (R. at 206). Dr. Sung indicated that the following limitations were "prob[ably]" present: marked restriction of activities of daily living; marked difficulty in maintaining social functioning; and, deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere) due to pain. (R. at 205).

Dr. Sung indicated that Plaintiff could never lift twenty pounds, could only stand or walk for less than two hours, and could sit only if it was possible to periodically alternate between sitting and standing. (R. at 207). Plaintiff also needed to frequently elevate his legs during an eight hour workday. (R. at 207). Plaintiff was otherwise found to be limited only in reaching and moving machinery. (R. at 208). Dr. Sung believed that Plaintiff had no capacity to work. (R. at 206).

6

*D. Administrative Hearing*

At the administrative hearing, Plaintiff testified that he was attending technical school for computer engineering and electronics. (R. at 18). Plaintiff typically attended classes three days a week. (R. at 19). Classes could be anywhere from an hour and a half long to four hours long. (R. at 19). Plaintiff commuted from his home in New Castle, Pennsylvania, to Youngstown, Ohio, for the classes. (R. at 19). Plaintiff's time at school, including the time taken to drive to and from school, approximated five hours a day. (R. at 20). Plaintiff maintained a 3.5 grade point average. (R. at 19). Plaintiff testified that school faculty were aware of his back problems and allowed him to alternate between sitting and standing during classes. (R. at 20). Plaintiff testified that he could only sit comfortably for about fifteen to twenty minutes at a time. (R. at 20).

Plaintiff testified that he was last employed as a commercial truck driver and driver trainer. (R. at 20-21). Plaintiff testified that he ceased to be employable as a truck driver in 2006 when his back condition prevented him from passing a required department of transportation physical. (R. at 21). He lost his job as a result. (R. at 22). Plaintiff had not tried to obtain employment afterward, instead beginning school for computer engineering and electronics. (R. at 22).

Prior to his time as a truck driver, Plaintiff testified that he spent approximately ten years in mostly management and associate positions in retail sales. (R. at 22). Plaintiff stated that he worked at stores such as Rent-A-Center, Rentway, and Sears, amongst other establishments. (R. at 22). Plaintiff claimed that he left the sales field because he had become burnt out. (R. at 23). What Plaintiff truly enjoyed was his job as a commercial truck driver. (R. at 23).

In addition to having problems remaining seated for extended periods, Plaintiff testified that his walking was limited to only a few blocks before he needed to sit. (R. at 24). Plaintiff also

7

suffered pain in his lower back if he lifted anything over twenty-five pounds. (R. at 24). Plaintiff could grocery shop independently, but asked for help carrying heavy grocery items. (R. at 24). A warm shower and application of BenGay or Icy Hot muscle rub sometimes provided Plaintiff with pain relief. (R. at 25). Plaintiff also testified that he took prescription Ibuprofen and over-the-counter Tylenol for pain. (R. at 25).

Though he had gone through physical therapy for his back as per Dr. Gardner's recommendations, Plaintiff testified that therapy provided him with little pain relief. (R. at 26). Plaintiff claimed that Dr. Gardner informed him that he had degenerative arthritis and that Plaintiff's back was not going to improve. (R. at 26). Plaintiff stated that he also received shot treatments in his back for pain. (R. at 26). According to Plaintiff, none of the doctors recommended surgery. (R. at 26).

Plaintiff described a regular day as waking up around eight or nine in the morning, making breakfast, lying and watching television until lunchtime, and then laying or sitting the rest of the day - if he had no classes or other plans. (R. at 27). Plaintiff explained that he had difficulty doing homework on his computer because sitting in a computer chair for extended periods was uncomfortable. (R. at 27). Plaintiff testified that he once was relatively athletic and active in sports, but that he stopped all activities and hobbies when the pain in his back worsened. (R. at 27-28). Plaintiff's pain made it difficult for him to go out with his girlfriend because he frequently experienced discomfort. (R. at 28). Plaintiff also had difficulty sleeping because of his pain. (R. at 28). Plaintiff often could not tie his shoes because it hurt to bend over. (R. at 30). Plaintiff testified that he had to lie down and prop up his legs to relieve discomfort in his lower back. (R. at 29, 32). Sometimes this occurred as little as two or three times a week, and sometimes this occurred as much

8

as two to three times a day - depending upon Plaintiff's pain level. (R. at 29, 32).

The ALJ questioned Plaintiff about whether he felt that he could engage in full-time work once he graduated from school. (R. at 29). Plaintiff testified that he would be qualified to do computer repair, and that he thought that as of the date of the hearing, he would be able to complete such work because it did not require a lot of bending or heavy lifting. (R. at 29). However, when Plaintiff's attorney questioned Plaintiff regarding whether he could engage in computer repair work if it required him to work under desks or on the floor, Plaintiff was unsure of whether he could do such work. (R. at 33). Plaintiff stated, "I'll have to . . . cross that bridge when I come to it." (R. at 33).

Vocational expert William Reid testified next. (R. at 36). The ALJ first asked Mr. Reid to consider whether a hypothetical person of Plaintiff's age and education could engage in any of Plaintiff's former jobs if such a person was limited to light work, and only occasional balancing, crouching, and kneeling. (R. at 36). Mr. Reid testified that such a person could work as a truck driver, sales associate, and sales manager. (R. at 36-37). The ALJ asked Mr. Reid to add the following limitations: only light lifting, and must alternate between sitting and standing every thirty minutes. (R. at 37). Mr. Reid testified that with the additional limitations, the hypothetical person could still likely work as a sales associate or sales manager, but not a truck driver. (R. at 37).

The ALJ then asked Mr. Reid to explain whether other jobs existed in substantial numbers in the national economy which might be available to a hypothetical person with all the aforementioned limitations. (R. at 37). Mr. Reid stated that the hypothetical person could work as either: a security guard - of which there were one million jobs in the national economy; unskilled photocopying/ business machine operator - of which there were 30,000 jobs in the national economy;

9

and, unskilled cashier with sit/stand option - of which there were 500,000 jobs in the national economy. (R. at 38-39).

The ALJ then asked Mr. Reid to consider whether any jobs would still be available to the hypothetical person if he or she had to lie down two or three times a week for potentially half an hour or longer. (R. at 39). Mr. Reid responded that such an individual would have difficulty keeping any job. (R. at 39).

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[2] and 1383(c)(3).[3] Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. When reviewing a decision, the district court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir.

---

[2]

Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business

42 U.S.C. § 405(g).

[3]

Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3d. Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion . . . so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. §706.

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). The ALJ must utilize a five-step sequential analysis when evaluating the disability status of each claimant. 20 C.F.R. §404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., pt. 404 subpt. P., appx. 1; (4) whether the claimant's impairments prevent him

from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiffs's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

## V.   DISCUSSION

The ALJ rejected Plaintiff's claim of disability because he determined that Plaintiff's record illustrated an ability to perform light work, as long as Plaintiff was allowed to alternate between sitting and standing every thirty minutes. (R. at 65). The ALJ based his conclusion, in large part, upon Plaintiff's testimony. Plaintiff was fully capable of living independently. (R. at 66). Since leaving the commercial trucking business, Plaintiff stated that he never attempted to find new work, instead becoming a full-time student. (R. at 66). According to Plaintiff, attending school required a thirty mile commute in each direction, and a full day of classes could be four to five hours in length. (R. at 66). Plaintiff held to this schedule three days a week. (R. at 66). Upon completing school, Plaintiff intended to work full-time as a computer repairman. (R. at 66). At his hearing, Plaintiff testified that he felt he would be fully capable of working full-time. (R. at 66).

The ALJ also concluded that the objective medical evidence did not indicate Plaintiff was incapable of engaging in substantial gainful activity. The ALJ found that Plaintiff sought treatment only sporadically, as his medical record revealed large spans of time between medical examinations

and multiple missed and/or cancelled appointments. (R. at 67). Dr. Gardner found only mild degeneration in Plaintiff's spine, and when Plaintiff questioned whether he should continue to work, was advised by Dr. Gardner that he should continue to maintain employment. (R. at 66).

Dr. Rezk found Plaintiff to be taking his prescribed pain medication irregularly. (R. at 66). Based upon Plaintiff's subjective complaints, Dr. Rezk concluded that Plaintiff was capable of lifting and carrying up to twenty pounds, standing for up to two hours, and sitting for up to eight. (R. at 66). Dr. Reidy found more significant degeneration in Plaintiff's lumbar spine than had Dr. Gardner, but prescribed only medication for pain and physical therapy - just as Dr. Gardner had. (R. at 67). Plaintiff refused Dr. Reidy's recommendation to have injections, and he showed only minimal discomfort when flexing his lumbar spine. (R. at 67). Dr. Ali determined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five. (R. at 67). Plaintiff was also capable of standing and walking six hours of an eight hour workday, and sitting approximately six. (R. at 67). According to the ALJ, Dr. Sung's medical notes were equivocal at best. Dr. Sung's findings were either contradicted by Plaintiff's testimony or were inconsistent with the findings of the other physicians. (R. at 67).

In his Motion for Summary Judgment, Plaintiff argues that the ALJ erred in failing to show how Plaintiff's limited time spent at school and basic daily activities at home indicated that he was somehow capable of engaging in substantial gainful activity on a full-time basis. (Doc. 8 at 3). Further, Plaintiff argues that the ALJ largely ignored the serious, physically debilitating findings made by Dr.'s Reidy and Sung, and instead focused upon the results of one examination conducted by Dr. Gardner several years before the hearing. (Doc. 8 at 3-4). Defendant counters by arguing that Plaintiff failed to meet his burden of proof at Step 4, and did not present sufficient proof of

13

Plaintiff's inability to return to his former employment as either a sales manager or sales associate. (Doc. 14 at 12). Further, Defendant argues that the ALJ properly reviewed the entire record, balanced the evidence, and fully accommodated Plaintiff's credible limitations in the hypothetical to the vocational expert. (*Id.* at 13). As a result, it was shown that Plaintiff qualified for a number of jobs existing in substantial numbers in the national economy. (*Id.*).

However, the court cannot support the Defendant's conclusions, because the ALJ failed to address all of the evidence weighing in Plaintiff's favor. "This court has recognized that there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). While it is understood that the ALJ is required to analyze and choose between conflicting medical accounts - and that the ALJ's findings are not expected to be as rigorous as the analyses of a medical professional or scientist - if the ALJ has not adequately explained his or her treatment of obviously probative evidence, the court cannot say whether substantial evidence supports an ALJ's conclusion. *Id.* at 705 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("the special nature of proceedings for disability benefits dictates extra care on the part of the agency in . . . explicitly weighing all evidence.")).

In the present case, the ALJ failed to discuss the fact that, despite Plaintiff having a somewhat sporadic treatment history with Dr. Sung, Plaintiff was consistently noted as suffering chronic low back pain. (R. at 172-75, 180, 202-03). Prior to his claim for benefits, Dr. Sung also felt that Plaintiff's back condition was severe enough that he could not serve as a juror due to an inability to sit for long periods of time. (R. at 180). In his limitations assessment of Plaintiff, Dr. Sung noted that Plaintiff could not bend, could not lift twenty pounds, and needed to keep his legs elevated. (R.

at 206-07). The ALJ never discussed these findings to credit or discredit them.

The ALJ downplayed, without explanation, the results of Dr. Reidy's medical findings indicating that Plaintiff suffered from significant, severe degeneration in his spine. (R. at 211-15). Both Dr. Reidy and Dr. Rezk noted that medication and physical therapy had not been effective in treating Plaintiff's symptoms in the past. (R. at 186, 213). Dr. Rezk, like Dr. Sung, also opined that Plaintiff should not do any bending. (R. at 183, 206). This finding, however, was not discussed or incorporated into the ALJ's hypothetical.

Additionally, the ALJ failed to mention that while Plaintiff stated that he could likely lift twenty-five pounds, it gave him back pain, afterwards. (R. at 24). The ALJ discounted Plaintiff's claim that he needed to keep his legs raised and lie down for significant portions of the day, because he was able to attend school and function independently at home. Yet, the ALJ did not explain how these activities approximated the rigors of full-time employment. The ALJ also failed to discuss how Plaintiff's school accommodated his condition to allow him to get through classes. (R. at 20). The ALJ did not address the fact that Plaintiff failed a physical due to his back - losing his job as a result - or his claimed inability to even bend over to tie his shoes. (R. at 21-22, 30). Plaintiff also testified that he was unsure of whether he would be able to complete the job he was in training for because of the potential need to do bending. (R. at 33).

The ALJ favored the medical opinion of Dr. Gardner over Dr. Sung and the other doctors in justifying his decision, but in explaining that Dr. Gardner's opinion deserved such weight the ALJ did not mention that Dr. Garnder's examination was conducted approximately two years prior to the hearing. Dr. Gardner also only met once with Plaintiff, as opposed Dr. Sung - who had multiple visits with Plaintiff for the same condition over several years.

The court recognizes that credibility assessments and the ultimate determination of disabled status for SSI and DIB are the sole province of the ALJ. However, the ALJ cannot reject probative evidence for "no reason or for the wrong reason." *Morales v. Apfel*, 255 F.3d 310, 317 (3d Cir. 2000) (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). The ALJ's decision should allow a reviewing court the ability to determine if "significant probative evidence was not credited or simply ignored." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). In this case, there is a significant amount of probative evidence - from a relatively short medical record - that was not discussed. The evidence weighing in Plaintiff's favor - such as the purported need to keep his legs elevated - would have a marked impact on his ability to hold substantial gainful employment on a full-time basis, as the vocational expert explained at the hearing. As a result, it is the ALJ's duty to discuss why such evidence was not credited. "Courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review." *Cotter*, 642 F.2d at 705 n. 7 (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The case must, therefore, be remanded for a more thorough analysis.

## VI.     CONCLUSION

Based upon the foregoing, the ALJ's determination was not supported by substantial evidence because it failed to properly discuss relevant, probative evidence weighing in Plaintiff's favor. The court is therefore without the benefit of a full explanation of the ALJ's reasoning for his decision. Accordingly, Plaintiff's Motion for Summary Judgment will be granted, to the extent it seeks a remand for further consideration, and denied, to the extent it seeks a reversal and entry of final judgment in favor of Plaintiff; Defendant's Motion for Summary Judgment will be denied; and, the

decision of the ALJ will be vacated and the case remanded for further consideration. An appropriate Order will follow.

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 27 September, 2010

cc: All counsel of record by Notice of Electronic Filing